Donald A Degnan (admitted *pro hac vice*)
Nadya C Bosch (admitted *pro hac vice*)
HOLLAND & HART, LLP
1800 Broadway, Suite 300
Boulder, Colorado  80302
Telephone:  (303) 473-2700
Facsimile:   (303) 473-2720
E-mail: ddegnan@hollandhart.com
E-mail: ncbosch@hollandhart.com

Ben M. Davidson (SBN 181464)
Marcus D. Peterson (SBN 265339)
HOWREY LLP
550 South Hope Street, Suite 1100
Los Angeles, California  90071
Telephone:  (213) 892-1800
Facsimile:   (213) 892-2300
E-mail: davidsonb@howrey.com
E-mail: petersonm@howrey.com

Attorneys for Plaintiff
RE/MAX, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RE/MAX, LLC, a Delaware limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>RE/MAX EMPIRE, INC., a California corporation, ERALINE TERRONES, an individual, WALTER TERRONES, an individual, and HECTOR VASQUEZ, an individual.<br><br>　　　　　　　Defendants. | CASE NO. 2:10-cv-04517-AHM (SHx)<br><br>**AMENDED CONSENT ORDER AND JUDGMENT**<br><br>**Defendant Hector Vasquez** |

## Introduction

On June 18, 2010, Plaintiff RE/MAX, LLC ("RE/MAX") filed a Complaint against Defendants RE/MAX Empire, Inc. ("RE/MAX Empire"), Eraline Terrones, Walter Terrones and Hector Vasquez ("Vasquez").  The Complaint alleges that the

Defendants (former franchise owners, operators and agents of a terminated RE/MAX real estate brokerage office in Montebello, California) continue to hold themselves out as being (or working for) an authorized RE/MAX franchisee.  The Complaint seeks injunctive and monetary relief for acts of trademark counterfeiting, trademark infringement, unfair competition, and dilution of a famous mark under the laws of the United States, Title 15, United States Code; for trademark infringement under Cal. Bus. & Prof. Code § 14200 *et seq.*; for unfair competition under Cal. Bus. & Prof. Code § 17200; and trademark infringement, and unfair competition under the common law of the state of California.

Defendant Hector Vasquez consents to have judgment entered against him as set forth below.  The remaining Defendants have failed to timely Answer or otherwise respond to the Complaint.

## I. Consents and Agreements

In order to effect settlement of the matters alleged against him in the Complaint in this action without a trial on the merits or further judicial proceedings, Defendant Vasquez:

1. Consents to entry of this Consent Order and Judgment ("Judgment");
2. Affirms that he has read this Judgment voluntarily, and that no promise or threat of any kind has been made by RE/MAX, or any officer or employee of RE/MAX, to induce Vasquez's consent to entry of this Judgment;
3. Affirms that he was represented by legal counsel in connection with the negotiation of this Judgment;
4. Acknowledges service of the summons and Complaint;
5. Admits that this Court has personal jurisdiction over him;
6. Admits that this Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338 and 1367;
7. Admits that venue properly lies with this Court;
8. Waives the entry of findings of fact and conclusions of law in this action

HOWREY LLP

2
Amended Consent Order and Judgment

pursuant to Rule 52 of the Federal Rules of Civil Procedure, except as to the facts stipulated to below in Section II;

9. Waives any and all rights to appeal this action;

10. Consents to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Judgment and for any other purposes relevant to this case, even if Defendant Vasquez now or in the future resides outside of the Court's jurisdiction; and

11. In consenting to the entry of this Judgment, Defendant Vasquez admits all of the allegations in the Complaint, each Finding of Fact, and the Conclusions of Law set forth in this Judgment.

## II. Findings of Fact and Conclusions of Law

This Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. This Court therefore directs the entry of Findings of Fact, Conclusions of Law, a permanent injunction, an order of monetary damages and other equitable relief, as set forth herein.

**A.   Findings of Fact**

**RE/MAX**

12. Since the early 1970's, RE/MAX has authorized a network of over 6,500 independent franchised offices throughout the United States and in over 70 countries worldwide, comprising over 90,000 franchisees and affiliated independent contractor/sales associates to use the trademarks and other intellectual property of RE/MAX in connection with providing real estate brokerage services.

13. RE/MAX is the owner of U.S. Trademark Registration No. 1,139,014 for the trademark "RE/MAX" (the "RE/MAX Mark"). RE/MAX is also the owner of U.S. Trademark Registration No. 1,173,586 for the service mark consisting of a hot air balloon design (the "Balloon Design"), and Registration No. 1,702,048 for the service mark consisting of a rectangular sign displaying three horizontal bars, the top of which is red, the middle of which is white, and the bottom of which is blue ("the Red-Over-

White-Over-Blue Design").

14. RE/MAX owns several additional U.S. trademark registrations for a family of marks that includes the RE/MAX Mark, the Balloon Design, and the Red-Over-White-Over-Blue Design together with other words and/or other design elements, including, but not limited to U.S. Trademark Registration Nos. 1,900,865, 1,902,943 and 1,691,854.

15. All of the above listed trademark registrations have achieved incontestability under 15 U.S.C. § 1065.

16. RE/MAX also owns California State Trademark Registration No. 5,610 for the RE/MAX Mark and California State Trademark Registration No. 37,219 for the mark comprising a red, white, and blue rectangular bar design.

17. The federal registration rights, state law rights, and common law rights of RE/MAX in the RE/MAX Mark, the Balloon Design, and the Red-Over-White-Over-Blue Design, as described above, are collectively referred to as the "RE/MAX Trademarks."

18. The RE/MAX Trademarks are used on a variety of advertising media, including listing signs. A color photo of the RE/MAX yard sign is below:



19. From approximately September 2005 until September 2009, Defendants Eraline Terrones and Walter Terrones were franchise owners of a RE/MAX real estate brokerage office operating as RE/MAX Empire, Inc. RE/MAX Empire is a California corporation having its principal place of business at 2444 West Beverly Boulevard,

Montebello, California 90640.

20. Defendant Vasquez is a real estate salesperson, licensed with the State of California Department of Real Estate ("DRE"). Vasquez currently works as an independent contractor at H & M Investments Inc. ("H & M Investments"), 2444 W Beverly Boulevard, Montebello, California 90640, which was formerly RE/MAX Empire. H & M Investments is also the "employing broker" currently sponsoring Vasquez's real estate license.

21. Vasquez represents, and RE/MAX relies upon the representation, that Vasquez is currently in the process of disassociating himself completely from RE/MAX Empire, H & M Investments, and any other company or business under the control of or otherwise affiliated with Eraline Terrones or Walter Terrones.

22. While affiliated with RE/MAX Empire, Vasquez believed that RE/MAX Empire was properly reporting Vasquez to RE/MAX as a salesperson affiliated with RE/MAX Empire.

23. During the period when Vasquez was affiliated with RE/MAX Empire, to his knowledge, there were approximately 15 to 20 real estate brokers and salespersons affiliated with RE/MAX Empire, approximately 5 of which were licensed.

24. Vasquez first learned, upon being served with this Complaint in June of 2010, that on September 7, 2009, RE/MAX had terminated its franchise agreement with RE/MAX Empire, Inc.

25. Upon being served with this Complaint, Vasquez learned that, RE/MAX Empire and all real estate professionals affiliated therewith were obligated to cease all use of the RE/MAX Trademarks within ten (10) days of termination of the franchise agreement.

26. At no time prior to Vasquez being served with the Complaint did Eraline Terrones, Walter Terrones, or any employee or agent of RE/MAX Empire, Inc., inform Vasquez that the franchise agreement had been terminated, or that he was no longer authorized to use the RE/MAX Trademarks.

27. Shortly after being served with the Complaint, Vasquez discussed the Complaint with Defendants Eraline and Walter Terrones, both of whom acknowledged having received and reviewed the Complaint.

28. Vasquez used the RE/MAX Trademarks and held himself out as a RE/MAX agent after September 7, 2009, through and until he was served with the Complaint filed in this action. A color photo of Vasquez' yard sign using the RE/MAX Trademarks is below:



29. As of the signing of this Consent Order and Judgment, to Vasquez's knowledge, Walter Terrones, Eraline Terrones, RE/MAX Empire and its associated brokers and/or real estate professionals continue to use the RE/MAX Trademarks and hold themselves out as being associated with, licensed by, or otherwise affiliated with RE/MAX.

30. Since September 7, 2009, Vasquez made at least two (2) sales of real estate while holding himself out as an authorized RE/MAX agent.

31. Under a valid franchise agreement, Vasquez would have been entitled to use the RE/MAX Trademarks in exchange for 1% of his commissions, plus franchise fees, ad fund fees, and annual dues in the amount of $306.88 per month.

32. RE/MAX and Vasquez therefore agree that as a reasonable royalty for his infringement of the RE/MAX Trademarks, Vasquez owes RE/MAX $250 in commissions and $3,375.68 in unpaid franchise fees, for a total of $3,625.68.

33. These sums indicate only the royalty attributable to Vasquez's use of the

RE/MAX Trademarks, and do not include monies and other damages owed by Defendants RE/MAX Empire, Walter Terrones or Eraline Terrones.

**B. Conclusions of Law**

**Jurisdiction and Venue**

34. This action arises under §§ 1114, 1125(a), and 1125(c) of the Trademark Act of July 5, 1946, as amended, commonly known as the Lanham Act, 15 U.S.C. § 1051 *et seq.*; Cal. Bus. & Prof. Code § 14200 *et seq.* and § 17200; and the common law of the state of California.

35. The Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367.

36. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b) because the Defendant Vasquez resides in and transacted business in the Central District of California, and the acts complained of occurred in this District.

**Violations of the Lanham Act, the Cal. Bus. & Prof. Code § 14200 *et seq.* and § 17200; and the common law of the state of California**

37. To prove infringement under the Lanham Act, a plaintiff must show ownership of a legally protectable mark and that there is a likelihood of confusion between that mark and the defendants' allegedly infringing material. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 346 (9th Cir. 1979). The likelihood-of-confusion standard used in Lanham Act infringement analysis also applies to RE/MAX's federal and state unfair competition claims, its California statutory trademark infringement and unfair competition claims, and its common law trademark infringement claim. *New West Corp. v. NYM Co.*, 595 F.2d 1194, 1201 (9th Cir. 1979); *Rearden LLC v. Rearden Commerce, Inc.*, 597 F. Supp. 2d 1006, 1018 (N.D. Cal. 2009); *Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 899 (9th Cir. 1997).

38.     In order to recover enhanced damages for federal trademark counterfeiting under 15 U.S.C. § 1117(b)-(c), RE/MAX must show that the infringement consisted of "intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services," 15 U.S.C. § 1117(b).  A counterfeit mark is defined as a spurious mark which is identical with, or substantially indistinguishable from, a mark that is registered and in use for the same goods or services, whether or not the person against whom relief is sought knew such mark was so registered.  15 U.S.C. §§ 1116(d)(1)(B), 1127.  *See United States v. Able Time, Inc.*, 545 F.3d 824, 832 & n.3 (9th Cir. 2008).

39.     The test for trademark dilution under the Lanham Act requires the trademark owner to show that its mark is famous, that the defendant made commercial use of the famous mark after it became famous, and that such use caused actual dilution. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1036 (9th Cir. 2007).  To be famous, a mark must be prominent and renowned.  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999).

40.     RE/MAX's certificate of registration for each of its federal trademarks is *prima facie* evidence of the validity of the mark and of RE/MAX's exclusive right to use it in connection with real estate brokerage and insurance brokerage services.  15 U.S.C. § 1057(b), § 1115(a).  RE/MAX's six federal trademarks have been registered and used in commerce for over five years, achieving incontestable status.  15 U.S.C. § 1065.

41.     Considering the eight factors involved in assessing a likelihood of confusion, the Court has determined that the overall impression conveyed to consumers by the RE/MAX Empire signs, as used by Defendant Vasquez, creates a likelihood of confusion.  The RE/MAX Empire signs are identical to the RE/MAX signs used while RE/MAX Empire was an authorized RE/MAX Franchise.  The signs use the RE/MAX word Trademark, the same red, white, and blue color scheme, the same horizontal bar arrangement, the same hot-air balloon placement in the left corner, and the same font

and positioning of identifying elements such as the office name, agent name, phone number, "For Sale," and the Realtor® "R" mark designating membership in the National Association of Realtors.

42.     RE/MAX's red, white, and blue tri-bar marks have become strong source identifiers within the market for real estate brokerage services and have wide consumer recognition.  Defendant Vasquez's signs are identical or substantially indistinguishable. Both Defendant Vasquez and Plaintiff RE/MAX advertise similar services using similar advertising means, operate through similar advertising channels, and attract the same class of consumers.

43.     Therefore, Defendant Vasquez's use of his red, white, and blue "RE/MAX Empire" signs in advertising his real estate services is likely to confuse ordinary consumers and has caused actual dilution to RE/MAX's Trademarks.

44.     Because there is a likelihood of confusion, dilution and no applicable affirmative defense, judgment is entered against Defendant Vasquez for his trademark counterfeiting, trademark infringement, unfair competition, and dilution of a famous mark under the laws of the United States, Title 15, United States Code (Counts I-IV); for trademark infringement under Cal. Bus. & Prof. Code § 14200 *et seq.*(Count V); for unfair competition under Cal. Bus. & Prof. Code § 17200 (Count VI); and trademark infringement, and unfair competition under the common law of the state of California (Counts VII-VIII).

45.     Because the Terrones' did not inform Vasquez of the termination, it is not clear that Vasquez intentionally or knowingly used the counterfeit RE/MAX signs. Therefore, an assessment of RE/MAX's damages, pursuant to 15 U.S.C. section 1117(a) and as measured by the reasonable royalty for the use of the RE/MAX Trademarks from the termination of the RE/MAX Empire franchise until Vasquez ceased using the marks in July 2010, is appropriate with regard to Defendant Vasquez.

46.     Because RE/MAX will suffer irreparable injury to its reputation and goodwill if Defendant Vasquez's infringing use continues – for which there is no

adequate remedy at law – RE/MAX's request for a permanent injunction is granted. 15 U.S.C. § 1116(a); *see also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988); *Levi Strauss & Co. v. Toyo Enterprise, Co.*, 665 F. Supp. 2d 1084, 1098 (N.D. Cal. 2009).

## III. Order and Judgment

**It is hereby ORDERED AND ADJUDGED:**

1. This Court has jurisdiction over Defendant Vasquez and over all the claims set forth against Defendant Vasquez.

2. Judgment is entered against Defendant Vasquez for trademark counterfeiting, trademark infringement, unfair competition, and dilution of a famous mark under the laws of the United States, Title 15, United States Code (Counts I-IV); for trademark infringement under Cal. Bus. & Prof. Code § 14200 *et seq.*(Count V); for unfair competition under Cal. Bus. & Prof. Code § 17200 (Count VI); and trademark infringement, and unfair competition under the common law of the state of California (Counts VII-VIII).

3. A Permanent Injunction is Ordered, effective immediately, enjoining Defendant Vasquez, and any of his principals, agents, servants, employees, successors and assigns and all those in privity, concert or participation with Defendant Vasquez from using, imitating, copying, duplicating or otherwise making any use of the RE/MAX Trademarks or any mark confusingly similar to the RE/MAX Trademarks in connection with providing, advertising or promoting real estate or related services, including without limitation:

    (i) imitating, copying, duplicating, or otherwise making any use of the RE/MAX Trademarks or any mark confusingly similar to the RE/MAX Trademarks;

    (ii) manufacturing, producing, distributing, circulating, selling, or otherwise disposing of any printed material which bears any copy or colorable imitation

of the RE/MAX Trademarks;

    (iii)    using any unauthorized copy or colorable imitation of the RE/MAX Trademarks in such fashion as is likely to relate or connect Defendant Vasquez with RE/MAX or the RE/MAX Network;

    (iv)    using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to believe mistakenly that any service advertised, promoted, offered, or sold by Defendant Vasquez is sponsored, endorsed, connected with, approved, or authorized by RE/MAX;

    (v)    causing likelihood of confusion or injury to RE/MAX's business reputation and to the distinctiveness of the RE/MAX Trademarks by unauthorized use of a confusingly similar sign design;

    (vi)    engaging in any other activity constituting unfair competition or infringement of the RE/MAX Trademarks or RE/MAX's rights in, or to use, or to exploit the same; and

    (vii)    assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (i) through (vi) above.

4.    Defendant Vasquez and his principals, agents, servants, employees, successors and assigns and all those in privity, concert or participation with Defendant Vasquez shall immediately cease all use of the sign depicted below, including but not limited to ceasing manufacture, purchase and/or distribution and display of such sign. In no event shall Defendant Vasquez, his principals, agents, servants, employees, successors or assigns or any others in privity, concert or participation with Defendant Vasquez use any sign design confusingly similar to the sign depicted below.



5.   Defendant Vasquez shall pay to RE/MAX a reasonable royalty for his infringement of the RE/MAX Trademarks in the amount of $3,625.68.  Vasquez shall submit payment in full within forty five (45) days from the date of signing of this Consent Order and Judgment.

6.   Defendant Vasquez shall submit a report to the Court, within five days of entry of this Order, detailing the steps he has taken to be in compliance with this Order, and certifying under penalty of perjury that Defendant Vasquez, and his principals, agents, servants, employees, successors and assigns, and all those in privity, concert or participation with him, are in compliance with this Order, or providing detailed reasons why any such entities or persons are not in compliance with this Order.

7.   Within one week of changing his employing broker from H & M Investments and no later than thirty (30) days from the date of signing of this Consent Order and Judgment, Vasquez shall submit to the Court the State of California DRE documentation confirming the change and stating the identity of his new employing broker.

8.   RE/MAX shall be entitled to its costs and attorneys' fees expended in pursuing compliance with or seeking enforcement of any provision of the Final Judgment and Permanent Injunction Against Defendant Vasquez.

9. The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Final Judgment and Permanent Injunction Against Defendant Vasquez by a finding of contempt.

ENTERED this 5th day of October, 2010.

_____
A. Howard Matz
United States District Judge

**APPROVED AS TO FORM AND CONTENT:**

\_\_\_\_/s/ Ben Davidson_____
Ben M. Davidson (SBN 181464)
Marcus D. Peterson (SBN 265339)
HOWREY LLP
550 South Hope Street, Suite 1100
Los Angeles, California  90071
Telephone:  (213) 892-1800
Facsimile:   (213) 892-2300
E-mail:  davidsonb@howrey.com
E-mail:  petersonm@howrey.com

Donald A. Degnan (admitted *pro hac vice*)
Nadya C. Bosch (admitted *pro hac vice*)
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, Colorado 80302
Telephone: (303) 473-2700
Facsimile:  (303) 473-2720
E-mail:  ddegnan@hollandhart.com
E-mail:  ncbosch@hollandhart.com

**Attorneys for Plaintiff,
RE/MAX INTERNATIONAL, INC.**

Hector Vasquez
1277 W. 37th Dr.
Los Angeles, CA 90007

**Defendant**

4886421_3.DOC